## THOMAS COCHRANE v. WINBURN'S EX'ORS.

Where there was no legal evidence to authorize the Court to give a certain charge to the jury, that they disregarded it in rendering their evidence, was no cause for a new trial.

See this case for where the plaintiff claimed title by limitation, and there was a verdict and judgment for plaintiff, and a motion for new trial on the ground that the verdict was contrary to the evidence overruled, and it was held there was no error.

Two years adverse possession of a slave will give a title to a party claiming by virtue of such possession, upon which he may recover against the former owner. The rule is the same where an estate is the party claiming by virtue of adverse possession in its legal representative, although the adverse possession may have commenced in its representative.

In actions for the recovery of specific property, or its value, the jury, in fixing the value of the property sued for, will not be confined to a very strict valuation. A high valuation, with a view of inducing a surrender of the property, is allowed, unless it is shown that it is not convenient or not possible to surrender the property in discharge of the judgment.

Where the jury, in an action to recover a slave or her value, found for the plaintiffs and assessed her value at $85 more than any witness testified she was worth, and judgment was rendered for the slave, or her value as assessed by the verdict, and nothing appeared in the record from which it could be inferred that the defendant was unable, or even that it was inconvenient for him to surrender the slave in satisfaction of the judgment, it was held that the Court did not err in refusing a new trial.

Appeal from Washington.    The appellees, in August, 1851, brought their action against the appellant, to recover a slave or her value, which they alleged to belong to the estate of their testator, one Winburn, who died in 1847, in possession of said slave, leaving his widow, one of the plaintiffs, his executrix and another his executor; that they took possession of the slave as the property of the estate of their testator, and

that the same remained in possession of the executrix and executor of the said testator, until on or about the 19th of July, 1851, when she was clandestinely taken from their possession by the defendant. The defendant claimed the slave as the property of the estate of Jeremiah D. Cochrane, of which he was the administrator. It appeared in evidence that the slave had been the property of Jeremiah D. Cochrane, deceased, and that he had hired her to Winburn; that Cochrane died in 1844; that Thomas Cochrane was appointed administrator and had inventoried a negro woman as the property of the estate of his intestate; that she remained in possession of Winburn until he died in 1847; that Winburn died testate, and that his wife, now Mrs. Robinson, and one Hill qualified as his executrix and executor: that they inventoried the slave as the property of the estate of their testator; that in January, 1851, Thomas Cochrane filed an account as administrator of Jeremiah D. Cochrane, in which he charged himself with, as belonging to the estate of his intestate, "One negro woman appraised in "original inventory at $400; hire of negro woman since "last settlement, two years at $50 per year, $100;" and represented that the estate was in debt and prayed for an order of sale; that subsequently on the 25th day of August, 1855, the plaintiff Mrs. Robinson, as one of the heirs of Jeremiah D. Cochrane, joined by her husband, the other plaintiff, appeared by attorney and excepted to the final account of said administrator, and in alleging what the said Thomas as administrator was chargeable with, set forth: "They here charge "that said administrator is chargeable with the amount of the "original inventory, $2148 17, with hire of negro for two "years at $50, $100," &c. There was testimony that the negro woman in controversy was the only slave that Jeremiah D. Cochrane owned at the time of his death; and that after his death Winburn and wife had spoken of her as belonging to his estate. A. J. Bell, a witness for the defendant, testified that some time after Winburn's death, while Mrs. Winburn was a widow, he was wounded by the kick of a

mule and was lying up at Mrs. Winburn's when Thomas Cochrane came there, and he heard some conversation between him and Mrs. Winburn, in which she admitted that the woman (Gabrella) sued for, had belonged to Jeremiah D. Cochrane; " and she said something about her brother James " having promised her to pay a debt of J. D. Cochrane's to " one Underwood, with the view of giving her the negro." The Court instructed the jury, for the defendant, " That if " they believed from the proof that the plaintiffs, or their at- " torney of record, have admitted in writing that said negress " belonged to the estate of J. D. Cochrane, deceased, if such " admission was made two years next preceding, or at any " time since the commencement of this suit, the plaintiffs can- " not recover in this suit." There was a verdict and judgment for the plaintiffs and the defendant appealed. The minor heirs of James Cochrane, deceased, who was a brother and heir of Jeremiah D. Cochrane, and who died in 1847 previously to the death of Winburn, intervened, but they did not appeal. The other facts will be found in the opinion of the Court.

*Giddings & Giddings*, for appellant. The appellants assign several errors. We will consider the 2nd error assigned, that the verdict and judgment are contrary to law and evidence.

The evidence for the plaintiff was similar to that on the former trial. The defendant proved, in addition to the evidence then adduced, by the records of the County Court of Washington county, in the estate of James D. Cochrane, deceased, the positive and direct acknowledgment of the plaintiffs that the negro sued for was the property of said estate on the 25th day of August, 1851, about the time of the filing of this suit. It will be seen, by the petition filed in the County Court by plaintiffs as heirs of James D. Cochrane, that they here set up their claim to their portion and distributive share of said estate, and also to the identical negro Ga-

brella and her hire. This is a record acknowledgment, and operates as an estoppel of plaintiffs' claim as executors of Winburn, and most certainly is sufficient to rebut the claim from the accidental inventory of the property as belonging to the estate of Winburn. The property had been inventoried by defendant as the property of J. D. Cochrane, the plaintiff calls on him in the County Court as heir of Cochrane for a final settlement, and thereby admits upon the record that the property of the negro is in said estate long after the filing of the inventory of Winburn. If this judgment stands the defendant is bound to pay for the negro twice; once to the plaintiff as heir of J. D. Cochrane, and once to them on this judgment.

Is it not apparent then that the verdict is contrary to law and evidence? It will be observed that the only claim of plaintiff is based upon limitation based upon the inventory of the property of Winburn, made December 15th, 1847. The suit having been filed more than two years subsequent to that time, any acknowledgment made by plaintiff within two years before the filing of the suit, or even since, would defeat the bar and deprive the plaintiff of title by limitation. It is but a naked title without equity, and from the facts in the case, it is evident that the inventory was made by accident, and that in fact the defendant had no knowledge of the adverse claim, as the negro had been inventoried as the property of J. D. Cochrane and was only retained by the permission of the defendant. And the witness Bell shows that the plaintiff acknowledged that the negro had belonged to the estate of J. D. Cochrane, and that James Cochrane had said that he intended to pay a debt to Underwood for J. D. Cochrane's estate and give her the negro. There is no evidence that this was done. This, if done, would have shown a title in plaintiff's own right. But the continual possession of the negro is accounted for. It is shown that the negro was hired to Winburn; that he paid hire and that the negro was retained by plaintiff by permission of the administrator of J. D. Cochrane, deceased. So it is evident that no claim adverse to defendant

was set up in the lifetime of Winburn; and it is submitted to the Court whether the claim set up by plaintiff as heir of J. D. Cochrane, deceased, filed August 25th, 1851, is not a full and complete bar to plaintiffs in this action.

We proved by the witness Bell and the record of the County Court the acknowledgments of the plaintiff within less than two years before the filing of the suit and the trial of the case. Had this evidence been before this Court on the former trial, would this Court have reversed the case? But it may be contended that the plaintiffs being executors, cannot by their act prejudice the estate of Winburn. The estate is not prejudiced thereby; for it is shown that the estate had no right to the negro. Can the act of the executrix be made the basis of the claim to the property, and in the other instance her acts and acknowledgments cannot be heard because she acts in a fiduciary capacity? Can her acts receive the sanction of law in one instance, and be rejected in the other? Can her acknowledgments be taken as the basis of title by limitation, and in the second their force and effect cannot be considered in staying the bar?

It would seem strange that her acts can be made a basis to support title by limitation in the first instance and that her acts in the second could not be received to explain the mistake, and impede the bar. Had the defendant had actual knowledge of her act in the inventory of the negro as Winburn's property, he could and doubtless would have had the same striken off on proof of that fact.

Again: under the facts as now shown to the Court, if Mrs. Robertson acquired any title by the act of limitation, it would be in her own right. To vest title in the estate, it must have been held adversely by Winburn in his lifetime.


*J. E. Shepard*, for appellees. Great stress is lain upon the objection, filed by myself as attorney for Mrs. Robinson to the account of Thos. Cochrane, administrator of Jeremiah Cochrane, for final settlement. There was not a single correct

item in the account, as we believed, and we objected specifically to each item, and because no account was given of a negro woman named in the inventory, (which is doubtless the same negro in controversy in this suit, but they did not prove it,) appellant claims this to be an admission that the woman is the property of Jeremiah Cochrane's estate. It may be an admission that she once was the property of his estate; and a charge that if the administrator of that estate had negligently or improperly lost the right to the negro, he was unquestionably accountable to the creditors and heirs for his laches.

But this evidence was improperly admitted. A bill in chancery being generally the suggestion of counsel can only be read to explain a decree, 1 Marsh. 74, (unless sworn to.) This plea was in a different Court, in a suit between different parties, and was entirely the suggestion of counsel. In its principles, it is the same as pleading in chancery, and could only properly be read to explain the action of the County Court. The County Court had taken no action on the subject. The rule is that a judgment or decree cannot be evidence in favor of any one against whom it cannot be read. (2 J. J. Marsh. R. 422; 4 Lit. R. 218, Rees v. Lawless.) Pleadings in a cause could not be read where a judgment or decree could not. Could a judgment in the County Court in the premises, have been read in this cause against the appellant? Clearly not. The cause in the County Court was Lucy Robinson, in her individual right, v. Thos. Cochrane, administrator of Jeremiah Cochrane. This suit in the District Court is, Lucy Robinson and her husband, executors of Winburn, v. Thomas Cochrane, in his individual capacity for a trespass.

LIPSCOMB, J. This suit was once before us, on the appeal of the present appellees; it was reversed and remanded for a new trial; and there was a verdict and judgment for the present appellees, from which an appeal has been taken by the appellant, who was the defendant in the Court below.

We have examined the record, and do not find a single er-

ror prejudicial to the appellants, in the charges or ruling of
the Court.   One of them in his favor, we will dispose of now,
because it is renewed here, on the ground that it had been dis-
regarded by the jury, and was therefore a ground on which a
new trial ought to have been granted.   It is contended, that
the exceptions filed in the Probate Court by the appellees, to
the account rendered by the appellant for a settlement of the
estate of Jeremiah Cochrane, his intestate, is an admission on
their part, that the slave sued for was a part of the estate of
the said intestate, and not the property of the testator, under
whom the appellees claim to hold the property by a title given
by the statute of limitation.

Mrs. Robinson, the executrix of her former husband Win-
burn, is the sister of Jeremiah Cochrane, and one of his heirs,
and for her, exceptions were filed to the whole account ren-
dered by the appellant; and no specific objection to the item
of hire for the slave claimed by her, was made, that could le-
gally be an acknowledgment, that the slave was the property
of the succession of Jeremiah, her brother, and the Court was
not authorized to give the charge that was asked by the ap-
pellant as to the effect of these exceptions; nor did thsee ex-
ceptions afford, although before the jury, sufficient grounds for
finding that they constituted evidence of an acknowledgment
on her part that the property belonged to the estate of her
brother.   The jury having given no weight or influence to
these exceptions, is no ground for setting their verdict aside.

The appellant contends that the Court below erred in refus-
ing to give the last charge asked by him: that is, in effect,
that if the property sued for by his executors were not in Win-
burn, when he died, the plaintiffs cannot hold the said slave
property by the statute of limitation.   Had the Court given
this charge, it would have been manifestly erroneous.   If he
was in possession at his death, no matter how, and his execu-
tors inventoried and returned to Court the property as a part
of his estate, then so claiming it would be from that time an
adverse possession, and at that time the statute of limitation

would commence running. It is precisely the same as if Winburn was still living, and had at the same period, by a notorious and decided act, claimed the property in his own right. Although he might have received the slave into his possession as bailee, his possession, from the time that the bailor had notice of such adverse possession, would be adverse, and the statute would commence running. We decided when this case was before us, that the adverse possession of the executors of Winburn commenced to run from the time of their return of the slave in the inventory, as a part of the property of their testator. There has been nothing shown in the record that could stop the operation of the statute.

It is contended that a new trial ought to have been granted, because the value of the slave sued for has been fixed by the verdict at a sum, eighty-five dollars higher than any witness swore she was worth. If this excess had been in an assessment of damages for the services of the slave during the detention, it would have been a good ground for setting the verdict aside, or requiring the plaintiff to accept the alternative of entering a remittitur for the excess; but nothing has been assessed for the services of the slave. The jury only fix the value of the slave, and the judgment is in the alternative. If the defendant does not choose to pay the assessed value, because he believes it to be too high, he can relieve himself from it by a surrender of the slave. For this reason, the jury in fixing the value of the property sued for, will not be confined very strictly to the precise valuation. A high valuation, with a view of inducing a surrender of the specific property, is allowed, unless the record shows that it is not convenient, or not possible to surrender the property in discharge of the judgment. In such cases the tendency of modern decisions has been, to limit the finding of the jury to the actual value of the article sued for. The fairness of this rule commends it to our sanction. There is, however, nothing in the record in this case, from which it can be inferred that the defendant is unable to surrender the slave sued for, or even inconvenient to do so,

in discharge of the value fixed upon the property by the verdict. The judgment is therefore affirmed.

Judgment affirmed.